IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRISON KONDER, | |
| Plaintiff, | Case No. 1:24-cv-00259 |
| v. | |
| ILLINOIS HIGH SCHOOL ASSOCIATION, | |
| Defendant. | |

## VERIFIED COMPLAINT

This is an action for injunctive relief by Plaintiff Harrison Konder ("Plaintiff" or "Harrison") against Defendant Illinois High School Association ("Defendant" or "IHSA") for its refusal to provide a reasonable accommodation or modification for a disabled student in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act") and Titles II and III of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C §§ 12132, 12182 ("ADA").[1] In support of this verified complaint, Plaintiff states as follows:

### FACTUAL BACKGROUND[2]

1. Harrison Konder was born on May 22, 2006. The following day, he was diagnosed with bilateral sensorineural hearing loss. In other words, Harrison was born deaf. Rather than experiencing the joy of welcoming a newborn baby into world, Harrison's parents endured watching their infant son undergo a series of tests and surgeries in the weeks and months

---

[1] For purposes of simplicity the terms "reasonable accommodation" and "reasonable modification" may collectively be referred to herein as "reasonable modification."

[2] The facts set forth below are derived from the verified declarations of Amanda Konder and Harrison Konder, attached as Exs. A-B and incorporated by reference as if fully set forth herein.

after his birth related to his hearing disability. These surgeries improved his hearing, but there was also permanent damage that was beyond repair. Harrison has worn hearing aids his entire life, which help with his hearing but still do not allow him to hear clearly, particularly in larger group environments or where there are other distractions.

2. Harrison has faced obstacles and adversity his entire life as a result of his disability. Starting at the age of three, Harrison attended Fairwood Preschool for Deaf and Hard of Hearing Children. The school day was long and it was a 45 minute bus ride each way to get to his school. During his preschool years, Harrison would regularly become frustrated with his difficulties communicating. He could not speak as quickly or as clearly as he wanted. He tried to communicate with his parents, but they could not understand him. It was an experience that was deeply isolating for Harrison.

3. Harrison attempted to participate in team sports, but because of his disability was unable to understand his coaches and teammates—an experience that was further frustrating and isolating for him. But, at the age of five, everything changed when Harrison discovered wrestling through a local wrestling club. When he was wrestling, Harrison did not feel different or disabled. He felt just like all of the other kids. Wrestling gave Harrison the self-confidence, resilience, and fighting spirit that he needed to overcome his disability. For the first time in his life, Harrison went from merely surviving to thriving.

4. While wrestling provided a refuge for Harrison, his educational experience continued to be challenging. Harrison attended Saint Joan of Arc School from kindergarten through second grade. He made friends and was doing well, but his reading was starting to suffer. His teachers advised Harrison's family that as a result of his disability, and the extra supports he needed due to his deficits in reading, he would need to transfer to another school for

2

third grade that would provide him with more support for his reading.

5. At the same time, his hearing aids were causing significant medical issues. While the hearing aids were vital for him to participate in everyday activities as they amplified all of the ambient sounds around him, they also caused frequent ear infections, including one so severe that it ultimately ruptured his eardrum.

6. Harrison transferred to Goodrich Elementary School for third grade where he stayed through sixth grade. Harrison struggled socially. He was burdened with physical signs of his disability which emphasized that he was different from his peers. For example, as part of his Individualized Education Plan ("IEP"), Harrison was provided with a frequency modulated ("FM") system for his hearing aids. Thus, everywhere he went Harrison had to carry a microphone system with him that his teacher would wear. This accentuated that Harrison was different and isolated him. There were also a number of occasions where his teachers forgot the microphone was on and had private adult conversations. This understandably made Harrison uncomfortable. There were also multiple occasions where teachers forgot that the microphone was on and wore it into the bathroom.

7. Through all of this adversity, wrestling remained a refuge for Harrison. Despite his differences in the classroom and all of the everyday stressors that he was exposed to as a result of his disability, wrestling was something that Harrison always looked forward to and brought him a sense of peace and belonging.

8. Harrison spent his first three years of high school at Downers Grove North High School ("DGN") where he participated on the high school wrestling team. During his junior year at DGN, Harrison was struggling academically. As a result, Harrison's family decided to transfer him to Montini Catholic High School ("Montini") for his senior year. Montini offered smaller

class sizes and more individualized attention and was otherwise better equipped to accommodate Harrison's hearing disability. Numerous doctors, medical professionals, therapists, and counselors—including DGN's own counselor—agreed that Harrison's transfer to Montini was a better educational environment for his disability. As one of Harrison' doctors noted:

> This is to certify that Harrison M Konder … is a patient with a sensorineural hearing loss and a documented history of inattention. His school transfer was motived for health/educational benefits that are offered at a smaller school.

Letter of Dr. John Ghassan, attached as Ex. C.

9. A licensed clinical social worker who works with Harrison similarly explained that his transfer to Montini was supported by "Smaller class sizes[,]" "Less distractions[,]" and "More accountability from teachers and staff[.]" *See* Letter of Christina Figueroa, attached as Ex. D. Ms. Figueroa further stated that "his transfer was motivated by increased access to learning opportunities and academic growth." *Id.*

10. Harrison's counselor at DGN similarly agreed that the transfer was in Harrison's best interest, noting that DGN "was not a good fit for Harrison as he does better, inside and outside of the classroom, with fewer distractions, fewer people and more individualized attention." *See* Letter of Dr. Sherri DeVore-Benitez, attached as Ex. E. Harrison's audiologist also noted the difficulties Harrison has in environments with more noise in a classroom. *See* Letter of Rebecca Salt, attached as Ex. F.

11. Harrison has thrived academically at Montini. During his first semester at Montini, Harrison received grades of 90 or higher (on a scale of 100) in five of his six classes, including grades as high as 97 and 99. *See* Harrison Konder's First Semester Grade Report at Montini, attached as Ex. G. This academic success was a direct result of his transfer to Montini.

12. Harrison should be applauded for his dedication to academics and athletics. But the IHSA thought otherwise. Because Harrison's hearing disability caused him to transfer to another school, the IHSA deemed Harrison ineligible to participate on the Montini wrestling team his senior year. Under the IHSA's transfer rules, a student who transfers schools is ineligible unless the transfer was due to "extenuating circumstances" or circumstances beyond the control of the student, the student's parents, and the new and former schools. Specifically, Section 3.043 of IHSA's By-Laws state that:

> [A] student who transfers attendance from one high school to another high school pursuant to these by-laws, shall be ineligible unless:
> ***
> …the transfer met one of the following conditions:
> ***
> • Extenuating circumstances documented by the sending school's principal or official representative;

IHSA By-Laws at Section 3.043.3, attached as Ex. H.

13. "Extenuating circumstances" is defined by the IHSA as:

> [T]hose which have had a significant adverse impact on a student's education or well-being which would be remedied, in whole or in substantial part, by a transfer of schools. In order to be considered "extenuating", the circumstance must be specific to the student in question and must have been brought to the attention of the school's principal and appropriate members of the school's faculty and administration. If applicable, the school must have been given the opportunity to take corrective action. Discipline issues, conflicts with peers, conflicts with school personnel, academic performance and any issue relating to athletics, are examples of circumstances that generally will not be considered "extenuating."

IHSA Handbook at 10 (Ex. H).

14. Harrison's transfer to Montini was solely to provide him with a better educational environment for his disability. It fits precisely within the definition of "extenuating circumstances." Moreover, these issues were brought to the attention of DGN and documented by DGN's counselor, Dr. Sherri DeVore-Benetez, who stated:

5

> I had multiple meetings and conversations with Harrision [sic] and his parents on how to help Harrison navigate and learn in the large high school setting that is DGN. Harrison [sic] junior year was particularly challenging for him as class expectations increased while structures and supports remained the same. This was not a good fit for Harrison as he does better, inside and outside of the classroom, with fewer distractions, fewer people and more individualized attention.

Letter of Dr. Sherri DeVore-Benetez (Ex. E). Harrison, therefore, is clearly eligible under Section 3.043 of IHSA's By-Laws.

15. Section 3.046 of IHSA's By-Laws similarly provides that a transferring student may be eligible where:

> [T]he circumstances giving rise to the transfer were completely beyond the control of all of the following:
> (1) the student
> (2) the student's parent(s)/guardian(s)
> (3) the schools to and from which the student transferred.

IHSA By-Laws at Section 3.046 (Ex. H).

16. Harrison's hearing disability is without question beyond the control of the parties involved and was the reason for his transfer. Thus, Harrison is also eligible under Section 3.046 of the IHSA's By-Laws.

17. Harrison disagrees that he does not meet the IHSA's eligibility criteria for transferring students. After all, the transfer was due to his hearing disability, a circumstance that is both "extenuating" and completely beyond the control of everyone involved. But even if he did not meet the technical requirements of the IHSA transfer rules, he should have been afforded a reasonable modification of those rules as mandated by the Rehabilitation Act and the ADA.

18. Harrison requested that the IHSA reasonably modify its transfer requirements by granting him eligibility to participate on wrestling team at Montini. That request was denied by IHSA's Executive Director, Craig Anderson. The IHSA's Board of Directors denied Harrison's appeal and affirmed Mr. Anderson's decision. *See* December 15, 2023 Letter from Craig

6

Anderson, attached as Ex. I.[3] Harrison sought reconsideration of this decision and provided additional information to the IHSA, but the decision was affirmed on January 10, 2024.

19. The IHSA's refusal to provide a reasonable modification under these circumstances violates the Rehabilitation Act and ADA. High school athletic associations must modify their eligibility requirements for disabled students unless "waiver of the rule in the particular case at hand would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 850 (7th Cir. 1999).

20. Here, allowing Harrison to wrestle his senior year at Montini will not impede any of the stated purposes of the IHSA and, in fact, will promote them. Harrison did not transfer to gain a competitive advantage in sports, there was no recruiting, and there are no other factors that would undermine the spirit and purpose of the IHSA's rules. The sole reason for Harrison's transfer was for the betterment of his education as a result of his hearing disability.

21. Importantly, the sole accommodation Harrison seeks is a change to IHSA's transfer eligibility rules. Harrison requires no further accommodation during a wrestling meet or in individual matches. He wrestles like any other kid, with the same rules, equipment, and officiating as any other student athlete.

---

[3] This letter cites Section 3.045 of the IHSA By-Laws, which govern transfers in conjunction with a change in guardianship. *See* IHSA By-Laws at Section 3.046 (Ex. H). Harrison's guardianship was recently changed to his grandmother but that occurred in November of 2023, well after Harrison transferred to and was already attending Montini. *See* November 2, 2023 Guardianship Order, attached as Ex. J. So, Harrison's transfer was not made in conjunction with the change in guardianship. It could not have been since the change in guardianship only occurred after the transfer. In any event, Section 3.045 similarly allows eligibility if the change in guardianship and transfer were beyond the control of the student, the parents, and the schools. For the same reasons set forth above, Harrison would be eligible under this rule even if it did apply to him (which it does not).

22. Harrison is also not seeking to extend his high school career beyond four years. Prior to this year, he has only attended high school—and participated in highs school wrestling—for three years. Nor is he seeking any age-related advantage. He has never been held back in school so he is the same age (younger, actually, because of his May birthday) than the other kids in his class and the opponents against whom he would compete.

23. Lastly, the IHSA Constitution vests its Executive Director with broad authority to "modify … non-compliance with any by-law or rule if the circumstances causing the student … be ineligible" were beyond the control of the student, parents, and school. *See* IHSA Constitution at Section 1.460 (Ex. H). In other words, the IHSA's Constitution already has a built-in mechanism to modify its rules to accommodate special circumstances like those at issue here. It just refuses to exercise that authority. So, again, granting Harrison eligibility here does not undermine the IHSA's rules: it would go part and parcel with them.

24. Denying Harrison eligibility to wrestle, on the other hand, actually impedes the stated purpose of the IHSA. Students with disabilities who are advised to transfer to a school better equipped to accommodate their disability will be forced to choose between a sport they love and have dedicated their entire life to—and all the benefits that go along with participating in interscholastic competition—or a better learning environment. No child or family should have to make such a decision. Indeed, such an outcome is abhorrent to the IHSA's stated purpose of enriching student's education experience through interscholastic competition. *See* IHSA Constitution at Section 1.120 (Ex. H).

25. In short, granting a reasonable modification to the IHSA transfer rule under these circumstances will not hinder any of the stated purposes of the IHSA. In fact, allowing Harrison to wrestle this season will promote the IHSA's stated purpose and mission. Wrestling has given

8

Harrison self-confidence, discipline, a means to cope with his disability, and, as the IHSA succinctly puts it, "lifetime learning experiences that cannot be duplicated in any other instructional setting." IHSA's Website, https://www.ihsa.org/About-the-IHSA/Mission-Statement-Beliefs. The IHSA also purports to "strive[] to allow student-athletes with disabilities to be integrated in IHSA sports and activities to the maximum extent possible." IHSA's Website, https://www.ihsa.org/Sports-Activities/Athletes-With-Disabilities. Allowing Harrison to wrestle his senior year at Montini will foster all of these stated goals of the IHSA and will in no way impede them.

### NO ADEQUATE REMEDY AT LAW AND IRREPARABLE INJURY

26. There is an inadequate remedy at law and Harrison will suffer irreparable harm if injunctive relief is not granted. Harrison will be denied the once in a lifetime opportunity to participate in high school athletics absent relief from this Court. In fact, absent immediate injunctive relief Harrison will be denied the opportunity to participate in the entire regular season as the only remaining regular season meets take place on January 11th, 13th, 20th and 24th. The Regionals leading up to the State Tournament began on February 3, 2024, Sectionals take place on February 9-10, 2024, and the State Tournament takes place on February 15-17, 2024. In other words, the season will be lost without immediate injunctive relief.

27. Allowing Harrison to wrestle will also provide him with social and emotional benefits that extend far beyond the mat. In fact, according to medical and other professionals, denying him that opportunity would be detrimental to his health:

> Participation in wrestling has given Harrison a lot of social/mental and physical benefits. He should not be excluded from these benefits as this would be detrimental to his health.

Letter of Dr. John Ghassan (Ex. C).

> It is my recommendation that Harrison's continued participation in wrestling is an essential part of his wellness and continued success in school and that his transfer was motivated by increased access to learning opportunities and academic growth.

Letter of Christina Figueroa (Ex. D).

> [W]hen [Harrison] started wrestling, he excelled and developed into an outstanding wrestler. As the years went by, his self confidence, esteem and overall well being was obviously better. He uses the sport of wrestling to cope with his disability. I believe it is medically necessary that he continue in the sport of wrestling.

Letter of Dr. James Matheu, attached as Ex. K.

28. Harrison would also like to continue to wrestle in college and possibly obtain an athletic scholarship. He has placed at the State Tournament in each of the past three years in his weight class, coming in 5th place his freshman year, 4th place his sophomore year, and 5th place his junior year. In other words, he is pretty good at wrestling. Harrison has the talent, desire, and work ethic to wrestle in college. Allowing him to wrestle the remainder of the season would expose him to college recruiters and increase his chances of obtaining a scholarship. Such an opportunity will never materialize absent injunctive relief. At a minimum, competing on the wrestling team is an extracurricular activity that is likely to increase Harrison's chances of being accepted to a university, regardless of whether he obtains an athletic scholarship.

29. Allowing Harrison to wrestle the remainder of this season will cause no harm to the IHSA or any third parties and, as noted above, will not hinder any of the IHSA's stated purposes. There are no competitive advantage, safety, or recruiting concerns in allowing Harrison to wrestle. The rules and officiating of meets will be unchanged. He will compete like every other wrestler. Harrison is not asking to lengthen his high school wrestling career and will be the same age (and weight) as those he competes against.

30. If Harrison was granted eligibility to participate on the Montini wrestling team, he would not replace any other member of the team. He would simply be an additional member of the team. In other words, no other student would lose their spot on the Montini wrestling team if Harrison was granted eligibility.

31. The public interest in allowing reasonable accommodations or modifications to disabled students, to do what is in the best interest of the student's educational needs, and to allow for the most opportunities for all student-athletes to compete also weigh heavily in favor of granting the requested relief.

32. Harrison waited this long to file this lawsuit because he first attempted to seek redress through the IHSA's own internal "process," and he truly believed that the IHSA would do the right thing and grant him a reasonable modification or accommodation. Unfortunately, this "process" was not completed until January 10, 2024, after a substantial portion of the wrestling season has already been concluded.

**PARTIES**

33. Plaintiff, Harrison Konder, is an individual residing in DuPage County, Illinois.

34. Defendant Illinois High School Association is an unincorporated association with its headquarters located at 2715 McGraw Drive, Bloomington, Illinois 61740-6011. *See* IHSA Website, https://www.ihsa.org/About-the-IHSA/Map-Directions. The IHSA supervises and regulates all of the interscholastic activities in which its member schools engage, including, without limitation, promulgating rules and regulations, establishing and enforcing student eligibility standards, and operating competitive meets at the sectional and state level. *See* IHSA Constitution at Section 1.130 and By-Laws, generally (Ex. H).

35. Members of the IHSA includes nearly 800 public and private Illinois high schools, which must rely on the IHSA to, among other activities, organize and administer all state championship meets. *See* IHSA Website, https://www.ihsa.org/Schools. All of the public high schools that are members of IHSA must, according to IHSA's Constitution, be supported by public taxation, and all member high schools must be recognized by the Illinois State Board of Education. *See* IHSA Constitution at Section 1.210 (Ex. H).

36. All IHSA-run regional and state championship competitions are held at high school, college, or minor league stadiums or other venues that are open to the public. Tickets are sold for these events and are available to the general public. *See* IHSA Website, https://www.ihsa.org/Resources/Digital-Tickets-from-GoFan.

37. The IHSA controls all aspects of interscholastic athletic events, including, for example, establishing the eligibility criteria for student athletes, dictating which member schools can compete in competitions, setting the hours and days during which interscholastic activities can be held, and regulating the qualifications of coaches and officials. *See* IHSA Constitution and By-Laws, generally (Ex. H). The IHSA establishes all the scoring rules and qualifying standards for student athletes. *Id.*

38. The IHSA is a recipient of federal financial assistance under the Rehabilitation Act.

39. The IHSA is a public entity under Title II of the ADA, 42 U.S.C. §12132, *et seq*.

40. The IHSA is a place of public accommodation and/or operates places of public accommodation under Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

**JURISDICTION AND VENUE**

41. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under the laws of the United States.

42. The Court has jurisdiction over Defendant and venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b), (c) and (d) because Plaintiff resides and attends high school in this District; Defendant sets standards, operates sectional and qualifying meets and otherwise conducts business in this District; and Defendant has sufficient minimum contacts with this District and a substantial portion of the events or omissions giving rise to the claims asserted herein arose in this District.

**COUNT I**
**VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794(a)**

43. Plaintiff repeats, realleges and incorporates by reference all prior allegations as if fully set forth herein.

44. This count is brought under Section 504 of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability…, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….

29 U.S.C. § 794(a).

45. The IHSA's programs constitute a program or activity within the meaning of the Rehabilitation Act.

46. The IHSA receives state and federal financial assistance through its participating schools.

47. As a result of the IHSA's refusal to provide Plaintiff with a reasonable modification of its transfer rules, Plaintiff has been excluded from, not integrated into, and denied the benefits of, participation in interscholastic high school athletics directed, controlled, and overseen by IHSA, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

48. By virtue of the conduct described herein, the IHSA has discriminated against Plaintiff because of his disability in violation of Section 504 of the Rehabilitation Act of 1973.

**WHEREFORE**, Plaintiff requests the following relief:

A. A temporary, preliminary, and permanent injunction requiring the IHSA to provide Plaintiff a reasonable accommodation or modification of its transfer rules and grant Plaintiff eligibility to participate in varsity wrestling for the remainder of his senior season;

B. An award of reasonable attorneys' fees and all expenses and costs of this action; and

C. Such other and further relief as this Court deems equitable, just, and proper.

## COUNT II
## VIOLATION OF TITLE II OF THE ADA, 42 U.S.C. § 12132

49. Plaintiff repeats, realleges and incorporates by reference all prior allegations as if fully set forth herein.

50. This count is brought under Title II of the ADA, 42 U.S.C. § 12132. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51. Because IHSA's membership is comprised mostly of public high schools, and because it receives state and federal funding through participating schools, IHSA is a public

entity as that term is defined in 42 U.S.C. § 12132.

52. Plaintiff is a qualified individual with a disability as defined by the ADA.

53. Plaintiff has been excluded from, and denied the benefits of, participation in interscholastic high school sports, an activity directed, controlled, and overseen by the IHSA, in violation of Title II of the ADA, 42 U.S.C. § 12132, *et seq*.

54. By virtue of the conduct described herein, the IHSA has discriminated against Plaintiff because of his disability in violation of Title II of the ADA, 42 U.S.C. § 12132, *et seq*.

**WHEREFORE**, Plaintiff requests the following relief:

A. A temporary, preliminary, and permanent injunction requiring the IHSA to provide Plaintiff a reasonable accommodation or modification of its transfer rules and grant Plaintiff eligibility to participate in varsity wrestling for the remainder of his senior season;

B. An award of reasonable attorneys' fees and all expenses and costs of this action; and

C. Such other and further relief as this Court deems equitable, just, and proper.

## COUNT III
### VIOLATION OF TITLE III OF THE ADA, 42 U.S.C. § 12182

55. Plaintiff repeats, realleges and incorporates by reference all prior allegations as if fully set forth herein.

56. This count is brought under Title III of the ADA, 42 U.S.C. § 12182, *et seq*. Title III of the ADA pertains to public accommodations and services operated by private entities, and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates

a place of public accommodation." 42 U.S.C. § 12182(a).

57. Title III of the ADA provides that discrimination includes:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C.A. § 12182 (b)(2)(A)(ii).

58. The IHSA is a "place of public accommodation" under Title III of the ADA as it owns, leases, and/or operates places of public accommodations; provides benefits and services for the public and for places of public accommodation; and provides and enforces rules, regulations, standards that are in force at meets conducted by places of public accommodation.

59. By virtue of the conduct described herein, the IHSA has discriminated against Plaintiff because of his disability in violation of Title III of the ADA in that the IHSA refuses to provide a reasonable modification of its transfer rules to accommodate the transfer to a school that provides a better educational environment based on a disability.

**WHEREFORE**, Plaintiff requests the following relief:

A. A temporary, preliminary, and permanent injunction requiring the IHSA to provide Plaintiff a reasonable accommodation or modification of its transfer rules and grant Plaintiff eligibility to participate in varsity wrestling for the remainder of his senior season;

B. An award of reasonable attorneys' fees and all expenses and costs of this action; and

C. Such other and further relief as this Court deems equitable, just, and proper.

COUNT IV
INJUNCTIVE RELIEF (BREACH OF CONTRACT—THIRD PARTY BENEFICIARY)

60. Plaintiff repeats, realleges and incorporates by reference all prior allegations as if fully set forth herein.

61. The IHSA's Constitution and By-Laws constitute a contract between the IHSA and its members, including Montini and DGN. *See Hutsonville Community Unit School District No. 1 v. Illinois High School Ass'n*, 2021 IL App (5th) 210308, ¶ 16. Students of member schools are third-party beneficiaries of this contractual relationship. *Id.* at ¶ 17.

62. Harrison, therefore, is a third-party beneficiary of the contract formed by the IHSA's Constitution and By-Laws. As shown above, by denying Harrison's eligibility, the IHSA breached its contractual promises set forth in, among others, Section 3.043.3 and 3.046 of the IHSA By-Law, as well as Section 1.460 of the IHSA Constitution. In the alternative, and to the extent it applies (which it does not), the IHSA breached Section 3.045 of the IHSA By-Laws.

63. Harrison was damaged by the IHSA's breaches in that, among other things, he has been denied the opportunity to compete on his high school wrestling team.

**WHEREFORE**, Plaintiff requests the following relief:

A. A temporary, preliminary, and permanent injunction requiring the IHSA to grant Plaintiff eligibility to participate in varsity wrestling for the remainder of his senior season;

B. An award of reasonable attorneys' fees and all expenses and costs of this action; and

C. Such other and further relief as this Court deems equitable, just, and proper.

Dated:  January 10, 2024

             Respectfully submitted,

             By: _____/s/ Jacie C. Zolna_____
                One of Plaintiff's Attorneys

Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
(312) 372-2100
***Attorneys for Plaintiff***

## VERIFICATION OF COMPLAINT

I, **Harrison Konder**, declare as follows:

I am the Plaintiff in this lawsuit and have personal knowledge of the facts set forth in the Factual Allegation and Irreparable Injury sections of the foregoing Verified Complaint and if called on to testify as to these matters could and would testify competently thereto. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 9, 2024

_____
Harrison Konder